FILED
APR 08 2024
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY ________ DEPUTY CLERK

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
DEL RIO DIVISION

UNITED STATES OF AMERICA,

Plaintiff,

vs.

ANA KAREN JUAREZ-JARALILLO,

Defendant.

Cause No.: DR24-CR-00508-AM

**STIPULATION OF FACTS**

The United States of America, by and through the United States Attorney for the Western District of Texas and the undersigned Assistant U.S. Attorney, the Defendant, and Defense counsel hereby stipulate that if this matter were to proceed to trial, the United States would establish by legal and competent evidence the following facts beyond a reasonable doubt:

On February 12, 2024, United States Customs and Border Protection officers, (hereinafter "CBPO"), encountered an individual later identified as Victor Arvizu-Tapia, indicted in cause number DR24-CR-0507-AM, when he applied for admission into the United States through the Camino Real International Bridge in Eagle Pass, Texas, located in the Western District of Texas. Arvizu-Tapia was a passenger in a grey Toyota Tacoma with Mexican license plates and being driven by Jose Santos Arvizu, his uncle and a United States citizen. Also in the vehicle was Ana Karen Juarez-Jaralillo, Arvizu-Tapia's wife.

In primary inspection, all occupants handed CBPO their documents, including B1/B2 visas from Juarez-Jaralillo and Arvizu-Tapia. CBPO noted discrepancies with the documents handed them by Juarez-Jaralillo and Arvizu-Tapia. CBPO noted that when swiped, neither visa populated

any information. CBPO inquired about their intended travel and length of their stay. Arvizu-Tapia advised that he and his wife were planning to stay in Houston for one month to visit family.

Arvizu-Tapia further advised that he had obtained his and Juarez-Jaralillo's visas in Cuidad Juarez on November 28th and December 4th, respectively. Thereafter, CBPO lawfully referred the occupants for secondary inspection. At secondary inspection, CBPO further noted Juarez-Jaralillo's visa lacked fine detail and security features present in valid visas. CBPO asked whether the visa belonged to her, and she again affirmed that it did. Both Juarez-Jaralillo and Arvizu-Tapia were then advised of their constitutional and statutory rights and warnings (*Miranda*) in a language they each understood, which they both knowingly and voluntarily waived, and agreed to speak to agents without an attorney present.

Juarez-Jaralillo's advised that though she knew the correct process to get a valid visa, she believed the process took long to be approved. Because she did not want to wait, she advised that her husband contacted someone in Mexico to expedite the process by procuring the visas they presented that day. She knew the documents were fake and showed CBPO a counterfeit electronic I-94 form on her phone which was also part of her fraudulent immigration packet.

Arvizu-Tapia, in a separate interview, advised that he obtained the visas after contacting a lawyer known to him by the name "Oscar," who expedited the process of getting the visas. He advised he was previously in the United States under the Deferred Action for Childhood Arrivals program but decided to return to Mexico. Because of this, he believed he would be denied a visa if he were to apply through the consulate, so he decided to pursue the visa in what he knew to be an unlawful manner. He advised that the cost of his visa was 128,000 Mexican pesos and 125,000 Mexican pesos for his wife's documents. He advised that he knew the documents were fake and that the manner in which he obtained them was illegal. He also advised agents that he had a

counterfeit electronic I-94 form included with his immigration packet. Lastly, he advised that his uncle, the driver, did not know that the documents presented her counterfeit.

Defendant, Ana Karen Juarez-Jaralillo now accepts responsibility and admits that on February 12, 2024 she did knowingly and willfully make materially false, fictitious, and fraudulent statements and representations to a United States Customs and Border Protection Officer, in a matter within the jurisdiction of an executive department or agency of the United States, knowing such statements and representations to be false in order to avoid further inspection by United States Customs and Border Protection Office. Defendant committed all the foregoing acts knowingly, intentionally and voluntarily with a specific intent to violate the law in violation of Title 18, United States Code, Section 1001(a)(2).

Respectfully submitted,

JAIME ESPARZA
United States Attorney

By: ______________________
EKUA ASSABILL
Assistant United States Attorney

I have carefully read and reviewed the entirety of this Stipulation of Facts, or it has been read to me (and if necessary, translated for me) and reviewed with me by my attorney. After careful consideration and discussion with my attorney, and fully understanding my rights with respect to the pending criminal charge(s), I knowingly and voluntarily agree the above Stipulation of Facts is true and accurate, and had the matter proceeded to trial, the United States would have proved the same beyond a reasonable doubt.

Signed this 26th day of March, 2024.

X [signature]
ANA KAREN JUAREZ-JARALILLO
Defendant

I am counsel for Defendant. I have fully explained to Defendant all of Defendant's rights with respect to the pending criminal charge(s). I have carefully reviewed this Stipulation of Fact in its entirety with Defendant and provided Defendant with my best professional advice. In my opinion, Defendant's decision to agree to this Stipulation of Fact made voluntarily, and with full knowledge of its obligations and consequences.

Signed this 26th day of March, 2024.

[signature]
SOSTENES MIRELES
Defendant's Attorney

Adopted and approved this 8th day of April, 2024.

[signature]
THE HONORABLE JOSEPH CORDOVA
United States Magistrate Judge